IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 16-cv-1789-WJM-KLM

JOHN DOE,

    Plaintiff,

v.

PHILIP DISTEFANO, in his official capacity as Chancellor of the University of Colorado, Boulder,

    Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Plaintiff was expelled from the University of Colorado at Boulder ("the University") in August 2014 after the University's Title IX office concluded that he had sexually assaulted two female students in separate incidents. Plaintiff sues Defendant Philip DiStefano, Chancellor of the University ("Defendant"), under a theory that the University's actions violated Plaintiff's procedural due process rights. Plaintiff requests that the Court order Defendant to purge an adverse notation from Plaintiff's University transcript. (ECF No. 102.)

Currently before the Court is Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff has failed to adequately plead a procedural due process violation. (ECF No. 112.) For the reasons explained below, Defendant's motion is granted as to any claim from Plaintiff based on a purported liberty interest in his reputation, but otherwise denied.

# I. RULE 12(b)(6) STANDARD

**A.     General Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted).  "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'"  *Id.* (quoting *Twombly*, 550 U.S. at 556).

**B.     Documents Outside the Pleadings**

DiStefano asks this Court to consider additional documents he has placed in the record, namely:

- the final report of the investigation into the alleged assaults at issue in this lawsuit (ECF Nos. 112-1);
- the University's Student Conduct Code Policies & Procedures for the 2013–14 academic year (ECF No. 112-2);
- an April 17, 2014 letter from the University to Plaintiff, announcing his

- summary suspension pending investigation of the accusations made against him (ECF No. 112-3);

- an April 21, 2014 letter from the University to Plaintiff, notifying him of the basis for the investigation into his conduct (ECF No. 112-4);

- a May 7, 2014 letter from the University to Plaintiff, providing more detail on the accusations made against him (ECF No. 112-5);

- a June 10, 2014 letter from the University to Plaintiff, notifying him of the basis for the investigation into his conduct with respect to a second alleged victim (ECF No. 112-6).

The Court may consider these documents if they are (1) "mentioned in the complaint," (2) "central to [the] claims [at issue]," and (3) not challenged as inauthentic. *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013).

The Court finds that only the first two documents have any potential relevance to the outcome explained below. As to those two documents, all three *Toone* elements are satisfied. Both documents are frequently mentioned, sometimes quoted, and generally relied upon in the currently operative complaint as evidence of Defendant's liability. (*See* ECF No. 102 ¶¶ 12–13, 46, 63 (report of the investigation); *id.* ¶¶ 12–13, 26–35 (Student Conduct Code).) Thus, these documents are both "mentioned" and "central" to Plaintiff's claims. Moreover, Plaintiff does not argue that these documents are inauthentic. The Court will therefore consider them for purposes of the Rule 12(b)(6) analysis below. However, the Court emphasizes that it considers these documents as evidence of what they say, not necessarily as evidence that what they say is true.

## II. FACTS & PROCEDURAL HISTORY

### A. Early Stages of this Lawsuit

This lawsuit has already been through one round of motions to dismiss. Plaintiff originally sued the University itself along with some of the University's employees ("Individual Defendants") involved in the investigation of his alleged sexual misconduct. (*See* ECF No. 1 (original complaint); ECF No. 26 (first amended complaint).) Plaintiff claimed that the University had violated Title IX of the Civil Rights Act of 1964, 20 U.S.C. §§ 1681 *et seq.* ("Title IX"), because the University's investigation and its outcome were both allegedly motivated by pervasive anti-male bias amounting to sex discrimination, which Title IX prohibits. Plaintiff also accused the Individual Defendants of violating his procedural due process rights.

The Individual Defendants soon moved to dismiss (ECF No. 28), followed a couple of months later by the University's separate motion to dismiss (ECF No. 52). The Court resolved those two motions on May 26, 2017 ("Prior Order"). *See Doe v. Univ. of Colorado*, 255 F. Supp. 3d 1064 (D. Colo. 2017) (ECF No. 91).

### B. Factual Allegations

The Prior Order provides an extensive account of the relevant factual allegations. *See id.* at 1069–73. The following summary is enough for present purposes.

The University's Title IX office received an anonymous tip in April 2014, that Plaintiff had raped two female University students—"Jane Doe 1" and "Jane Doe 2"—in separate incidents. The Title IX office summarily suspended Plaintiff based only on this tip. It then assigned investigative duties to Alexandra Tracy-Ramirez ("Tracy-Ramirez").

From late April through mid-July 2014, Tracy-Ramirez interviewed Jane Doe 1, Jane Doe 2, and ten potential witnesses. Tracy-Ramirez met in person with Plaintiff at

4

least twice and also communicated with him in writing, but Plaintiff and/or his attorney repeatedly represented that they did not have enough information to respond adequately to the charges against him. Plaintiff says he therefore felt constrained to respond only in writing, and only through basic denials of the specific accusations.

On July 24, 2014, Tracy-Ramirez issued a written report documenting and evaluating her investigation. In that report, she concluded it was more likely than not that Plaintiff had sexual intercourse with Jane Doe 1 knowing that Jane Doe 1 was, at the time, too intoxicated to consent to such sexual activity. As for Jane Doe 2, who was not intoxicated at the time of the alleged incident, Tracy-Ramirez concluded it was more likely than not that Plaintiff forced himself sexually upon her despite repeated protestations.

The following day, a University review panel approved Tracy-Ramirez's report. Then, on August 26, 2014, the University's Office of Student Conduct chose to impose a sanction of permanent expulsion. The University also placed a permanent notation on Plaintiff's transcript stating that he had violated the University's sexual conduct standards. Likely anticipating this possibility, Plaintiff had by then already transferred to another university, but he continues to fear the consequences of this notation on his transcript when it is seen by graduate schools and employers.

**C.     Resolution of Defendants' Motions**

The University's previous motion to dismiss argued that Plaintiff had failed to plausibly plead anti-male bias, so his Title IX cause of action failed as a matter of law. The Court agreed and dismissed that claim. See Doe, 255 F. Supp. 3d at 1073–79.

The Individual Defendants' motion to dismiss argued, among other things, that they were entitled to qualified immunity and so could not be sued for alleged procedural

5

due process violations.  The Court again agreed.  *See id.* at 1083–85.

At that point, the only remaining viable claim was against the University itself for a violation of procedural due process.  But the Eleventh Amendment provides sovereign immunity to the University for any action claiming damages.  *See id.* at 1081.  Thus, Plaintiff was limited to requesting injunctive relief, such as an order that the University expunge the disciplinary notation from his transcript.  *See id.* at 1081–82.  The Court noted, however, that it was not clear whether Plaintiff had sued the proper defendant, *i.e.*, the state official charged by law with ensuring that transcript notations are disclosed to third-party requestors.  *See id.* at 1082–83.  The Court therefore gave Plaintiff an opportunity to amend his complaint and name the proper defendant.  *Id.* at 1083.

**D.     The Second Amended Complaint**

Plaintiff timely filed his Second Amended Complaint (ECF No. 102), to which the Court will refer simply as the "Complaint."  Having conferred with the University's counsel regarding the issue, Plaintiff named Chancellor DiStefano as the appropriate defendant for Eleventh Amendment purposes.  (*Id.* ¶ 22 & n.1.)[1]

The Complaint's factual allegations are materially indistinct from his prior allegations and require no separate summary.  Per the Court's Prior Order, the Complaint limits itself to a procedural due process claim and a request for injunctive relief.

---

[1] Defendant has been named in his "official capacity."  In a strict technical sense, this is inappropriate.  Under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), a state officer is considered amenable to suit, despite the Eleventh Amendment, because the state officer has allegedly acted in such a way that he or she no longer should be considered a state official, and thus not protected by the Eleventh Amendment.  "Without question, the doctrine of the case is fictive," 13 Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 3524.3 (3d ed., Apr. 2018 update), and in most respects the action proceeds like any other official-capacity action.  But to avoid Eleventh Amendment immunity, Defendant should be considered sued in his individual capacity—although the only available relief against him is prospective.

Defendant has now moved to dismiss, arguing that Plaintiff has failed to plead a viable procedural due process claim.

## III. ANALYSIS

The Fourteenth Amendment's Due Process Clause states, "No state shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. A court must "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *see also Zwygart v. Bd. of Cnty. Comm'rs*, 483 F.3d 1086, 1093 (10th Cir. 2007).

### A. "Whether There Exists a Liberty or Property Interest Which Has Been Interfered with by the State"

No Defendant contested this element in the prior round of motions to dismiss. The Court therefore discussed it only at a cursory level, as follows:

> In *Goss v. Lopez*, 419 U.S. 565 (1975), the Supreme Court held that public school students have a "property interest" in their public education, and that any deprivation of that education which is "not *de minimis*" requires some form of due process. *Id.* at 576 (holding that a ten-day suspension was not *de minimis*). Many courts have recognized that a public university may not suspend or expel a student for alleged sexual misconduct without some amount of process. *See, e.g., Austin* [*v. Univ. of Oregon*, 205 F. Supp. 3d 1214, 1221 (D. Or. 2016)]; [*Doe v. Univ. of*] *Cincinnati*, [173 F. Supp. 3d 586, 600 (S.D. Ohio 2016)]; *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 15 (D. Me. 2005).

*Doe*, 255 F. Supp. 3d at 1079.

Defendant's current motion to dismiss likewise does not challenge the existence of a property interest, nor the Court's prior language on the subject, apparently

7

considering the matter settled for present purposes. (*See* ECF No. 112 at 3 ("The Court has already recognized that public education may give rise to a property interest." (citation omitted)).) Defendant instead attacks Plaintiff's assertion that paragraph 94 of the Complaint stating that "[a] person has a protected liberty interest in his good name, reputation, honor and integrity." (*Id.* (internal quotation marks omitted).)

Plaintiff does not respond to this argument and so the Court deems it conceded. Moreover, Defendant's argument is well-founded. Harm to reputation alone is not the sort of harm that supports a procedural due process claim. Rather, there must be some sort of attendant diminishing of another legal right, such as a right to public employment or public education—the so-called "stigma plus" test. *See Paul v. Davis*, 424 U.S. 693, 708–11 (1976); *Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011); *Doe v. Alger*, 175 F. Supp. 3d 646, 656–61 (W.D. Va. 2016).

Defendant's motion is therefore granted to the extent Plaintiff asserts a liberty interest solely in his reputation. However, because Defendant does not challenge Plaintiff's claim to a property interest in his education at the University, the Court must move on to the next element of the procedural due process inquiry.

**B.     "Whether the Procedures Attendant upon That Deprivation Were Constitutionally Sufficient"**

1.     The *Mathews v. Eldridge* Balancing Test

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (alterations in original). To discern the procedural protections demanded by any particular situation, the Court must consider the following three factors:

- The interests of the individual in retaining their property and the injury

8

threatened by the official action;

- The risk of error through the procedures used and probable value, if any, of additional or substitute procedural safeguards;

- The costs and administrative burden of the additional process, and the interests of the government in efficient adjudication.

*Id.* at 335. Because the Court is considering a Rule 12(b)(6) motion, the Court need only evaluate whether Plaintiff has a plausible claim that these three factors will weigh in his favor. *See, e.g.*, *Alger*, 175 F. Supp. 3d at 656 (evaluating "whether the plaintiff has sufficiently alleged that the process he received was constitutionally inadequate").

2. Plaintiff's Specific Grievances

Plaintiff summarizes his procedural due process claim as follows:

> In the course of CU Boulder's investigation and adjudication, CU Boulder flagrantly violated Plaintiff's clearly established rights under the Due Process clause of the Fourteenth Amendment through its deprivation of the minimal requirements of procedural fairness. Without limitation, such acts included the following:[2]
>
> A. Suspending and excluding Plaintiff based on an anonymous call before any investigation was conducted;
>
> B. Suspending and excluding Plaintiff before a complaint was filed by either Jane Doe 1 or Jane Doe 2;
>
> C. Failing to notify Plaintiff of the facts and circumstances relied upon in issuing the summary suspension and exclusion from campus;
>
> D. Failing to provide Plaintiff with proper notice of the allegations against him before requiring Plaintiff to issue a statement regarding the allegations;
>
> E. Soliciting complaints from Jane Doe 1 and Jane Doe 2;

---

[2] In the Complaint, the ensuing list is bullet-pointed. For ease of reference, the Court has inserted consecutive lettering in place of bullets.

F. Investigating the accusations concerning Jane Doe 1 for nearly a month before providing Plaintiff with notice of the charges;

G. Investigating the accusations concerning Jane Doe 2 for nearly two months before providing Plaintiff with notice of the charges;

H. Denying Plaintiff and his counsel access to the investigative file until nearly three months after Jane Doe 1's complaint was made against him. When he was provided access, he could not copy any of the information in the file and much of it was redacted, precluding him from being fully made aware of the charges against him;

I. Failing to provide an impartial and neutral decision-maker to conduct the investigation;

J. Allowing Tracy-Ramirez to intimidate Plaintiff, while serving as an advisor and advocate for Jane Doe 1 and Jane Doe 2;

K. Allowing Tracy-Ramirez to draw an adverse inference against Plaintiff for submitting written statements concerning his defense, while Jane Doe 2 also failed to appear in person;

L. Denying Plaintiff a hearing before an impartial panel;

M. Denying Plaintiff the opportunity to confront and question his accusers or witnesses against him;

N. Denying Plaintiff the opportunity to call witnesses in support of his defense before a fair and impartial decisionmaker;

O. Leaving the evaluation of the credibility of the witnesses, the weight of the evidence, and the determination as to whether Plaintiff violated the Code to the sole discretion of a single investigator;

P. Ignoring conduct on the part of Jane Doe 1 indicating that she had engaged in consensual sexual intercourse with Plaintiff;

Q. Issuing an unwarranted sanction in response to Tracy-Ramirez's sole determination that Plaintiff violated the

> Code; and
>
> R. Denying Plaintiff the right to appeal any portion of the process, including his expulsion and exclusion from the University on August 26, 2014.

(ECF No. 102 ¶ 97; *cf.* ECF No. 26 ¶ 130.)

Judging from this list, it appears Plaintiff attempts to allege two injuries he suffered from the alleged denial of procedural due process. Items A, B, and C address Plaintiff's summary suspension—and indeed, the parties spend a significant portion of their briefs arguing over the summary suspension. (*See* ECF No. 112 at 5–7; ECF No. 127 at 8–11; ECF No. 128 at 1–4.) The remaining items on Plaintiff's list address the investigation and its outcome, leading to expulsion and a permanent notation on his transcript.

### 3. The Summary Suspension

The Court has no jurisdiction to resolve whether the University violated Plaintiff's procedural due process rights when it summarily suspended him. The Court previously explained that, to overcome the Eleventh Amendment's grant of immunity to the State of Colorado, Plaintiff must bring a claim for injunctive relief challenging an ongoing injury. *Doe*, 255 F. Supp. 3d at 1081. Plaintiff's request to expunge his disciplinary record meets that requirement. *See id.* By contrast, Plaintiff has identified no ongoing injury from the summary suspension, which has now been superseded by his expulsion. Thus, the Court may not inquire into whether the summary suspension itself violated Plaintiff's procedural due process rights.

### 4. Preponderance of the Evidence

Absent from Plaintiff's list of grievances (Part III.B.2) is an accusation that the

University's preponderance of the evidence standard[3] is too low in light of the possibility that the University could impose a sanction of permanent expulsion and a transcript notation identifying sexual misconduct as the basis for that expulsion. This absence is rather surprising given the Court's statement in the Prior Order that "there is a fair question whether preponderance of the evidence is the proper standard for disciplinary investigations such as the one that led to Plaintiff's expulsion." *Doe*, 255 F. Supp. 3d at 1082 n.13.

Plaintiff instead alleges (although not in his itemized list) that "Tracy-Ramirez *failed to apply* the preponderance of the evidence standard in Plaintiff's case, which ultimately led to an erroneous finding of responsibility." (ECF No. 102 ¶ 73 (emphasis added).) The briefing on the current motion to dismiss shows that the wording of this allegation is intentional. In response to Defendant's arguments about the significance of the burden of proof (ECF No. 112 at 11–12), Plaintiff announces, "It may fairly be argued that due process requires a standard higher than [a] preponderance of the evidence, but all that the Second Amended Complaint pleads is that the University failed to apply the preponderance standard" (ECF No. 127 at 16–17). Plaintiff has thus elected not to challenge the burden of proof.

Defendant argues that a public entity's failure to follow its own policies, such as failing to employ the preponderance standard, cannot state a procedural due process violation. (ECF No. 112 at 11.) Defendant cites another campus sexual misconduct case, *Doe v. University of Cincinnati*, 173 F. Supp. 3d 586 (S.D. Ohio 2016), apparently

---

[3] The actual phrase used in the University's documentation is "preponderance of the information" (ECF No. 112-2 § G(11)), but this distinction immaterial given the arguments the parties actually make (or not) on this matter.

12

for the following passage: "Plaintiffs contend that the Panel applied the definition of consent improperly. However, an allegation that the disciplinary board violated its own policies and procedures does not state a claim for a due process violation." *Id.* at 603.

*Cincinnati* is distinguishable. A university's definition of "consent" is not a question of procedure, but of substance—of what constitutes sexual misconduct under the university's policies. Moreover, taken to its logical end-point, Defendant's argument in this case would essentially mean that public institutions could escape procedural due process liability so long as their stated procedures meet the due process standard, regardless of whether the institution actually follows those procedures. A public institution could announce, for example, that persons accused of misconduct are entitled to all the trappings of civil litigation, including discovery, application of the rules of evidence, and a formal adversarial hearing—almost certainly satisfying procedural due process requirements, and likely going well beyond. Then, as long as the foregoing continued to be the policy on paper, the institution could do anything it wanted in practice, with impunity. Plainly this is not the law. The Court therefore rejects Defendant's argument that an allegation of failure to follow stated procedures has no significance in a procedural due process analysis.

The question, rather, is whether the allegation has significance in this case. If due process does not *require* at least a preponderance of the evidence in these circumstances, then Tracy-Ramirez's alleged failure to take the preponderance standard seriously may not matter. For example, if due process in this context requires only something like a "substantial evidence" burden of proof, the question would be whether Tracy-Ramirez had substantial evidence to support her findings, regardless of

13

the words she chose (*e.g.*, "more likely than not") when she announced those findings. *See Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 522 (10th Cir. 1998) ("a university's failure to follow its established guidelines in overseeing a grievance does not in and of itself implicate constitutional due process concerns" because "[t]he federal courts, and not the [university], are responsible for establishing the contours of the Due Process Clause of the Fourteenth Amendment" (internal quotation marks omitted)).

But, in yet another surprise, Plaintiff does not argue that a preponderance is the bare minimum required under due process. Thus, to the extent Plaintiff means to argue that Tracy-Ramirez could not have reasonably determined that a preponderance of the evidence weighed against Plaintiff, that argument is meaningless for present purposes because it assumes a premise that Plaintiff does not try to prove—namely, that due process required at least a preponderance of the evidence.[4]

There is, however, another aspect to Plaintiff's preponderance argument. He claims that he was "presumed guilty from the outset and charged with the task of

---

[4] Defendant additionally argues, for the first time in his reply brief, that an allegation of failure to properly apply the preponderance standard is not actionable because it says nothing about whether University officials subjectively believed that the evidence amounted to a preponderance. (ECF No. 128 at 6.) Defendant derives this proposition from *Doe v. The Trustees of the University of Pennsylvania*, 270 F. Supp. 3d 799 (E.D. Pa. 2017). There, the defendant was a private university and thus not subject to federal due process scrutiny, but the plaintiff brought similar claims under a breach of contract theory, *i.e.*, that the university's disciplinary documents created contractual obligations that the university breached in carrying out his disciplinary proceeding. *Id.* at 810. In that context, the district court rejected the plaintiff's allegation that the university had breached its contractual obligation to follow a preponderance standard because the complaint did not allege that members of the disciplinary panel "did not actually believe or conclude based on the evidence that it was more likely than not that [the plaintiff] had violated the Sexual Violence Policy." *Id.* at 819. Whatever the value of this case under Pennsylvania contract law, the Court does not see the value under federal due process law. If this reasoning is accepted, it would create a good-faith exception to procedural due process liability—as long as government officials believe that they are carrying out the process correctly, the plaintiff would have no remedy. Defendant has not cited, nor is the Court aware of, any authority for a good-faith exception in this context.

proving his innocence," and he connects this accusation to Tracy-Ramirez's alleged failure to abide by the preponderance standard. (ECF No. 102 ¶ 73.) This is actually an argument about "the locus of the burden of persuasion," *Lavine v. Milne*, 424 U.S. 577, 585 (1976), or in other words, which party must satisfy the burden of proof.

Defendant counters (*see* ECF No. 112 at 12) by quoting *Lavine* for the proposition that, "[o]utside the criminal law area, where special concerns attend, the locus of the burden of persuasion is normally not an issue of federal constitutional moment." 424 U.S. at 585. But this gets ahead of Plaintiff. Plaintiff's argument implies that the burden of persuasion should be somewhere other than on the accused. The Court has reviewed the University's "Student Conduct Code Policies & Procedures" for the relevant time period (ECF No. 112-2) and cannot find anything that places the burden of persuasion on any party. It simply directs the investigator to decide whether, on the information gathered, it is more likely than not that the accusations are true. Plaintiff makes no argument that it is a due process violation to establish a standard of proof without allocating a burden of persuasion.

To the extent Plaintiff means to say that the University has a *de facto* practice of placing the burden of persuasion on the accused, or at least that Tracy-Ramirez conducted *this* investigation by expecting Plaintiff to prove his innocence, the Court recognizes the Supreme Court's pronouncement that the matter is "normally not an issue of federal constitutional moment." *Lavine*, 424 U.S. at 585. The placement of the burden in a particular case may nonetheless be relevant as evidence of bias, discussed below.

5. The Investigation & Sanction

The Court now returns to Plaintiff's explicit accusations of procedural due

process infirmities, as summarized in his list reproduced in Part III.B.2, above. Setting aside matters related to his summary suspension, the question is whether Plaintiff has stated a plausible claim of a procedural due process violation. Again, this is—or at least should be—a matter addressed under the three-part balancing test established in *Mathews v. Eldridge*. *See, e.g.*, *Plummer v. Univ. of Houston*, 860 F.3d 767, 773–77 (5th Cir. 2017) (acknowledging and analyzing the three factors).

Defendant does not present any argument connected to the *Mathews v. Eldridge* factors. Defendant instead distills Plaintiff's list of accusations into more general headings, and presents case law in which courts have held that the sort of procedures Plaintiff requests are not required in academic disciplinary proceedings. (ECF No. 112 at 7–11, 14–15.) For example, Defendant notes Plaintiff's claim that he should have received a live adversarial hearing (apparently referring to items L, M, N, and O from Plaintiff's list) and cites cases that appear to reject such a claim in the academic disciplinary context. (*Id.* at 9–11.)

In fairness to Defendant, he has not misquoted or misapplied any of his cited cases. The Court nonetheless questions whether those cases pursue the procedural due process analysis in the appropriate way. In particular, Defendant's cases frequently announce standards for academic disciplinary proceedings as if stating categorical rules. *See, e.g.*, *Pacheco v. St. Mary's Univ.*, 2017 WL 2670758, at *17 (W.D. Tex. June 20, 2017) ("it is clear that the right of cross-examination and confrontation as it exists in criminal settings is not a requirement of due process in school disciplinary proceedings"); *Hariri v. Portland State Univ.*, 2017 WL 826961, at *11 (D. Or. Mar. 2, 2017) ("Constitutional due process does not . . . require any right to appeal from

16

disciplinary decisions on any particular grounds."); *Howe v. Pennsylvania State Univ.— Harrisburg*, 2016 WL 393717, at *5 (M.D. Pa. Feb. 2, 2016) ("[A] student is not entitled to 'discovery' as if he were a litigant in a civil or criminal proceeding. Schools must simply provide an accused student with notice of the charges they face and the nature of the evidence supporting those charges."). All of these statements may be true as a general matter. A student cannot claim, for example, that *all* academic disciplinary proceedings entail a right of discovery or cross-examination or appeal. But neither are such procedures categorically removed from consideration. Again, the question is the "procedural protections [that] the particular situation demands." *Mathews*, 424 U.S. at 334.

Having failed to engage Plaintiff's claim at this level, Defendant has not persuaded the Court that the claim is implausible on its face. In particular, the Court notes the following. Prior to the 2011 Dear Colleague Letter, *see Doe*, 255 F. Supp. 3d at 1067–68, academic discipline lawsuits were (a) much less frequent and (b) as likely as not to arise from matters closer to the core of the academic process, such as cheating, *see, e.g.*, *Nash v. Auburn Univ.*, 812 F.2d 655, 656 (11th Cir. 1987), or disruptive protests, *see, e.g.*, *Goss*, 419 U.S. at 569. More recently, it appears that the overwhelming majority of academic discipline lawsuits arise from sexual misconduct allegations that in most cases could also be the basis of a felony prosecution. There is a fair question, not addressed by Defendant, whether this context—wherein a plaintiff is accused of conduct which may form the basis for criminal prosecution—changes the *Mathews v. Eldridge* calculus in a manner requiring more than minimal notice and an opportunity to respond. *See, e.g.*, *D.L. Cromwell Investments, Inc. v. NASD Regulation,*

*Inc.*, 279 F.3d 155, 162 (2d Cir. 2002) (discussing intersection of Fifth Amendment privilege and noncriminal investigations); *see generally* 1 Wayne R. LaFave *et al.*, Criminal Procedure § 2.7(a) (4th ed., Dec. 2017 update) (discussing the many ways in which criminal accusations raise due process questions). Indeed, the Supreme Court's classic statements about due process emphasize the need for "notice and opportunity for hearing *appropriate to the nature of the case*," *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950) (emphasis added), and that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and *in a meaningful manner*," *Mathews*, 424 U.S. at 333 (internal quotation marks omitted; emphasis added). In this light, Plaintiff's Complaint pleads a plausible procedural due process violation, given the fact that the conduct of which he was accused in his University proceeding could also give rise to possible criminal culpability.[5]

6. <u>Bias</u>

Plaintiff also claims that the disciplinary process was biased against him. In the Prior Order, the Court concluded that Plaintiff had not plausibly alleged gender bias for Title IX purposes. *Doe*, 255 F. Supp. 3d at 1076–79. However, in the procedural due process context, Plaintiff need not allege gender bias, or indeed any bias on the basis of any otherwise legally protected group or class of individuals. To the contrary, any type of actual bias is sufficient:

> A fundamental principle of procedural due process is a
> hearing before an impartial tribunal. A tribunal is not

---

[5] The Court emphasizes that it is not prejudging the merits. In particular, there is an important question whether Plaintiff essentially rejected his "opportunity to be heard" during the investigation process because he apparently chose to stand on procedural objections rather than offering his own side of the story. However, that is a matter best decided on a full record, not on the limited record available at the pleading phase.

18

> impartial if it is biased with respect to the factual issues to be decided at the hearing. However, a substantial showing of personal bias is required to disqualify a hearing officer or tribunal in order to obtain a ruling that a hearing is unfair. Moreover, because honesty and integrity are presumed on the part of a tribunal, there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated.

*Tonkovich*, 159 F.3d at 518 (internal quotation marks and citations omitted; alterations incorporated).

Defendant attacks Plaintiff's bias accusations by again citing cases that appear to have discounted similar allegations. (ECF No. 112 at 13–14.) And again, the Court finds these cases unhelpful. In one case, the district court decided *at summary judgment* that the plaintiff's "subjective impressions [of bias], without more, [were] insufficient to show that [the head of the hearing panel] was biased or show a genuine issue of material fact regarding same." *Doe v. Trustees of Boston Coll.*, 2016 WL 5799297, at *16 (D. Mass. Oct. 4, 2016). In another case, the plaintiff alleged that the 2011 Dear Colleague Letter had prompted his University to institute "a practice of railroading students accused of sexual misconduct simply to appease the Department of Education and preserve its federal funding," but the district court baldly declared this allegation "not reasonable" and so rejected it. *Cincinnati*, 173 F. Supp. 3d at 602. This Court is not so willing to reject such an accusation at the pleading phase.

The Court finds that Plaintiff's accusations, taken together, create a plausible inference of bias against those accused of sexual misconduct. Whether the Plaintiff can develop evidence of "a substantial showing of personal bias," *Tonkovich*, 159 F.3d at 518, is a matter for discovery.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 112) is GRANTED to the extent Plaintiff asserts a liberty interest solely in his reputation, but otherwise DENIED.

Dated this 7th day of May, 2018.

BY THE COURT:

_____
William J. Martinez
United States District Judge