**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-CV-01789-WJM-SKC

JOHN DOE,

      Plaintiff,

v.

PHILIP DISTEFANO, in his official capacity as
Chancellor of the University of Colorado,
Boulder,

      Defendant.

---

## DEFENDANT'S RESPONSE OPPOSING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

Defendant Philip P. DiStefano, in his official capacity, (the "University"), responds in opposition to Plaintiff's Motion for Summary Judgment ("Motion") (ECF # 161).

## <u>INTRODUCTION</u>

Plaintiff argues that the University is constitutionally prohibited from investigating an alleged sexual assault by one of its students if the alleged perpetrator could be subject to criminal prosecution – ostensibly because of "constructive double jeopardy" and the Fifth Amendment. Plaintiff does not cite any legal authority for this extraordinary position. Nor does Plaintiff identify undisputed facts that support his position, or explain how his theory squares with the University's Title IX obligation to investigate Plaintiff's alleged multiple sexual assaults. Plaintiff also casually accuses the investigator of drawing negative interferences from Plaintiff's decision not to respond to the charges.

He makes this up. Then, he tacks on two pages stating that because the University does not have a hearing, due process was denied.

But here's the truth: Plaintiff chose not to participate in the University's process. He was given multiple opportunities to meet with the investigator and tell his side of the story. He declined. Plaintiff and his attorney were allowed to review all of the witness statements obtained by the investigator. He responded to none of them. He could have submitted proposed questions for witnesses. He did not. Instead, he delayed the process so that he could apply to another university and send them a clean transcript before an expulsion was on his record.

Plaintiff's claim that he was denied due process rings hollow. He didn't participate in the process – choosing instead to make vague general denials. Indeed, Plaintiff makes clear that he would not have participated no matter what process the University had in place.

Plaintiff's decision to delay, obfuscate, and in the end, say nothing, is not process denied, it is process avoided.

## GLOBAL RESPONSE TO PLAINTIFF'S MATERIAL FACTS

Plaintiff's "Statement of Undisputed Facts" does not comply with this Court's practice standards, which require "[e]ach statement of fact must be accompanied by a specific reference to supporting evidence in the record." WJM Revised Practice Standards § III.E.3. Plaintiff supports the majority of his "Undisputed Facts" with citations to allegations, such as those in his Second Amended Complaint (ECF # 102) and this Court's May 26, 2017, Order, which took Plaintiff's allegations as true for

purposes of the Defendants' motions to dismiss (ECF # 91). Importantly, Plaintiff does not cite to admitted allegations from his Second Amended Complaint. (Mot. at 3 ¶2; 5 ¶16; ECF #134, ¶¶ 1-2; 66.) Plaintiff's noncompliance with this Court's practice standards warrants denial of his motion for summary judgment. *See* WJM Revised Practice Standards § I.A.2.

## RESPONSE TO PLAINTIFF'S MATERIAL FACTS

1. Admit that Court's May 2017 order accepted Plaintiff's "facts as true for purposes of the …Motions to Dismiss." *Doe v. Univ. of Colo.*, 255 F. Supp. 3d 1064, 1069 (D. Colo. 2017). Deny that Plaintiff's allegations should be "incorporated by reference in the interest of judicial efficiency."

2. Admit that Plaintiff was investigated for two allegations of sexual misconduct. (Ex. A, Notices of Investigation, identified at Alexandra Tracy-Ramirez Dep. 38:22-24; 50:22-51:3, 100:8.) The University does not know what "delayed disputed consent" means. Admit that Plaintiff generally and vaguely denied any nonconsensual sex. (Ex. B, Plaintiff Dep. 47:10-16; 55:5-12.)

3. Admit. Plaintiff's fraternity president reported the two assaults. (Ex. C, Tracy-Ramirez Dep. 80:18-24; 82:2-14.)

4. This is argument not fact. Deny that "several weeks" is a "long delay." Admit that assault against Jane Doe 1 was reported approximately seven months after it occurred. (Ex. A, CU_2-7; Ex. D, Investigative Report, p. 1, identified at Tracy-Ramirez Dep. 34:5.) Admit that assault against Jane Doe 2 was reported approximately five weeks after it occurred. (Ex. A, CU_8-9; Ex. D, p. 1.)

5. Admit that the 2013-14 Student Conduct Code (SCC) governed Plaintiff's misconduct. Deny that cited page requires a "unilateral[]" "duty to cooperate." Admit the 2013-14 SCC states "[s]tudents have a duty to cooperate and discuss the incident with an investigator[.]" (Ex. E, 2013-14 SCC, § E, identified at Tracy-Ramirez Dep. 22:20-25.)

6. This is argument, not fact. Admit that plaintiff was summarily suspended. (Ex. F, Summary Suspension, identified at Jessica Doty Dep. 18:15-17.) Deny the suspension was imposed "without meaningful standards." There were five grounds for issuing a summary suspension, including to "stop actions or potential actions that threaten the health or safety of any person." (Ex. E, § L.7.) Gonzales considered those grounds in issuing Plaintiff's summary suspension. (Ex. G, Christina Gonzales Dep. 29:2-7, 35:6-18.) Further, Plaintiff's interim suspension is irrelevant. *See Doe v. DiStefano*, 2018 U.S. Dist. LEXIS 76268, at *14 (D. Colo. May 7, 2018).

7. Deny. The University's investigations do not "have felony criminal jeopardy attached." (Ex. H, Valerie Simons Dep. 75:2-6.) Admit that the University has jurisdiction to investigate allegations of sexual assault. (Ex. E, §§ C, F.)

8. This statement is argument. Admit that students have a right to appeal in limited circumstances. (Ex. E, §§ K.1, App'x 1.)

9. Admit. (Ex. E, App'x 1 § D.)

10. Deny. Title IX investigations do not proceed on an "accelerated timeline." (Ex. E, App'x 1 § D.) Plaintiff's investigation took approximately 13 weeks. (Ex. D.)

11. This argument cites no facts. Deny. Plaintiff did not "attempt what was essentially a felony criminal defense." Plaintiff was granted access to the investigative file. (Ex. B, Plaintiff Dep. 49:16-24; 50:17-51:9; 56:24-57:5; Ex. C, Tracy-Ramirez Dep. 96:23-97:15; Exhibit I, Plaintiff's Correspondence, identified at Plaintiff Dep. 54:1, 81:22; 82:12; 83:16, 85:6 and Tracy-Ramirez Dep. 108:8.)

12. Admit that Plaintiff did not participate in the investigation and relied instead on procedural objections and written denials. (Ex. J, Plaintiff's counsel's procedural objection, identified at Tracy-Ramirez Dep. 89:9-14.) Deny that the investigation was a "hostile circumstance[]" that denied due process. The University does not know what advice Plaintiff's attorney gave him.

13. Deny. In large part, the University has no idea what this paragraph means. The investigator's final report explains that Plaintiff's "choice[]" not to participate "do[es] not detract from his credibility." (Ex. D, p. 37.)

14. This is argument not fact. Deny. The investigator, Alexandra Tracy-Ramirez, personally spoke with Jane Doe 1 and Jane Doe 2. (Ex. C, Tracy-Ramirez Dep. 116:23-25; 117:24-25; Ex. D, pgs. 22-23, 29.) She also spoke with Witness E.S., who described hearing Plaintiff brag about having nonconsensual sex with Jane Doe 1. (Ex. D, pgs. 16-17.)

15. Admit that Plaintiff was summarily suspended. (Ex. F.) Admit he was expelled permanently, but on August 26, 2014. (Ex. K, Notice of Sanction, identified at Doty Dep. 60:7-11.) Deny that Plaintiff was "barred from his classes," "terminated from his employment," or "evicted from his living arrangements." Plaintiff

completed the semester and received passing grades in all his classes, and his fraternity only restricted him to his fraternity house annex. (Ex. B, Pl. Dep. 43:9-16; Ex. D, p. 8.)

16. Deny. The University does not assert a right or obligation to "publish this information without consent as 'a public safety issue.'" (ECF #134 ¶ 66.) Plaintiff does not believe that the University has disclosed his expulsion. (Ex. B, Pl. Dep. 25:11-14.)

## DEFENDANT'S STATEMENT OF ADDITIONAL FACTS

1. On April 15, 2014, Plaintiff's fraternity president called Christina Gonzales, then the Associate Vice Chancellor of Dean of Students, to report multiple instances of sexual misconduct against Plaintiff. (Ex. G, Gonzales Dep. 15:19-21; Ex. D, pgs. 7-8.)

2. On April 21, 2014, Tracy-Ramirez issued Plaintiff a Notice of Investigation with information about the alleged assault against Jane Doe 1. (Ex. A, CU_3-4.)

3. On May 7, 2014, Tracy-Ramirez issued Plaintiff a revised Notice of Investigation with more details about the alleged assault against Jane Doe 1. (Ex. A, CU_5-7.)

4. After receiving the Notice of Investigation – around the "middle, end of April" 2014 – Plaintiff applied for admission to Santa Clara University. (Ex. B, Pl. Dep. 8:6-10.)

5. Plaintiff did not have to present Santa Clara with a transcript that included his expulsion from CU Boulder, and he has never informed Santa Clara of his expulsion. (Ex. B, Pl. Dep. 8:21-9:8.)

6. Plaintiff graduated from Santa Clara in 2016 with an undergraduate degree and a Master's Degree in engineering management and leadership. (Ex. B, Pl. Dep. 7:4-9; 8:15-20.)

7. On June 10, 2014, Tracy-Ramirez provided Plaintiff with a Notice of Investigation with information about the alleged assault against Jane Doe 2. (Ex. A, CU_8-9.)

8. During her investigation, Tracy-Ramirez spoke with 12 people: Jane Doe 1; Jane Doe 2; 7 male student witnesses who were members of Plaintiff's fraternity; and 3 female witnesses who were friends with Jane Does 1 and 2. (Ex. D, p. 3.)

9. Jane Doe 1 reported she remembered waking up "naked, not in her own bed, and in a bedroom that was not familiar to her;" that she learned she "went home with" Plaintiff; that the next day "she could 'tell' from physical sensations that she had vaginal intercourse;" and that "[Plaintiff] was bragging about having sex with her." (Ex. D, pgs. 22-23; Ex. C, Tracy-Ramirez Dep. 111:24-112:10.)

10. Plaintiff did not inform Tracy-Ramirez why he believed the sexual intercourse with Jane Doe 1 was consensual. (Ex. B, Pl. Dep. 33:8-11.)

11. Witness D.D., identified as Plaintiff's friend, reported that Plaintiff told him that Jane Doe 1 said "no" to Plaintiff, and that she "didn't do things the way that he wanted to but that he went ahead and had sex with her anyway." (Ex. C, Tracy-Ramirez Dep. 129:23-130:3; Ex. D, pgs. 14-15.)

12. Plaintiff did not tell Tracy-Ramirez that anything Witness D.D. said was untrue. (Ex. B, Pl. Dep. 70:21-71:2.)

13. Witness E.S. reported that he heard the conversation between Witness D.D. and

Plaintiff, wherein Plaintiff acknowledged that Jane Doe 1 had said "no" but Plaintiff continued to have sex with her. (Ex. D, pgs. 16-17; Ex. C, Tracy-Ramirez Dep. 133:8-10.)

14. Plaintiff never told Tracy Ramirez that what Witness E.S. said was untrue. (Ex. B, Pl. Dep. 74:15-17, 76:6-9.)

15. Witness C.S. reported that Plaintiff told him about having sex with Jane Doe 1 shortly after it happened; Witness C.S. also described that Plaintiff "didn't seem upset" about his suspension or the accusation of assault. (Ex. D, pgs. 18-19; Ex. C, Tracy-Ramirez Dep. 134:14-17; 135:3-5.)

16. Plaintiff never told Tracy-Ramirez that what Witness C.S. said was untrue. (Ex. B, Pl. Dep. 71:5-7; 72:6-9.)

17. Witness C.A. reported that Jane Doe 1 "felt she had been sexually assaulted." (Ex. C, Tracy-Ramirez Dep. 138:10-15; Ex. D, p. 24.)

18. Witness A.D., who saw Jane Doe 1 with Plaintiff on the night of the alleged assault, reported Jane Doe 1 thought she could not have consented to sex with Plaintiff because of her intoxication. (Ex. C, Tracy-Ramirez Dep. 138:25-139:18, 140:1-5; Ex. D, p. 25-26.)

19. Jane Doe 2 confirmed with Tracy-Ramirez that Plaintiff had sex with her after she had "made it very clear that she didn't want to have sex with him." (Ex. C, Tracy-Ramirez Dep. 143:13-25; 144:17-145:2.)

20. Jane Doe 2 was sober at the time. (Ex. D, p. 29.)

21. Jane Doe 2 believed Plaintiff had "a sense of entitlement, that he didn't take no

for an answer." (Ex. C, Tracy-Ramirez Dep. 145:16-22.)

22. Plaintiff did not tell Tracy-Ramirez why he believed the sexual intercourse with Jane Doe 2 was consensual. (Ex. B, Pl. Dep. 38:9-12.)

23. Plaintiff and his attorney had an opportunity to, and did, review the investigative file, which included witness interview notes. (Ex. B, Pl. Dep. 49:16-24; Ex. C, Tracy-Ramirez Dep. 114:20-115:4.)

24. Plaintiff had an opportunity to name additional helpful witnesses, for Tracy-Ramirez to contact. (Ex. C, Tracy-Ramirez Dep. 109:3-12.)

25. Plaintiff had an opportunity to provide information about the credibility of witnesses. (Ex. C, Tracy-Ramirez Dep. 113:11-114:9.)

26. Plaintiff could have given Tracy-Ramirez questions to ask witnesses. (Ex. C, Tracy-Ramirez Dep. 114:12.)

27. Plaintiff did not name any witnesses. (Ex. B, Pl. Dep. 53:16-22.)

28. Plaintiff did not suggest any questions to ask witnesses. (Ex. B, Pl. Dep. 90:21-24; 91:8-11; Ex. C, Tracy-Ramirez Dep. 114:17-18.)

29. Plaintiff instead chose to submit a general denial. (Ex. I; Ex. J.)

30. Plaintiff did not provide any input, additional information, or voice any concerns about the investigative file. (Ex. C, Tracy-Ramirez Dep. 115:1-4; 132:17-24.)

31. Tracy-Ramirez determined that it was more likely than not that Plaintiff had nonconsensual sex with Jane Does 1 and 2 in violation of the 2013-14 SCC. (Ex. L, Decision Letter, identified at Tracy-Ramirez Dep. 150:16-18.)

32. The Standing Review Committee reviewed and approved the findings. (Ex. M,

Christopher Pacheco Dep. 5:23-6:3.)

33. Jessica Doty, then Assistant Director in the Office of Student Conduct, determined that the finding warranted expulsion in part because there were two instances of nonconsensual sexual intercourse. (Ex. N, Jessica Doty Dep. 52:5-22.)

34. None of the University's investigators or employees were personally biased against Plaintiff. (Ex. H, Simons Dep. 24:1-6; 26:2-16; 35:3-15; Ex. N, Doty Dep. 14:7-15:5.)

## ARGUMENT

**I.      Plaintiff identifies no facts that show he is entitled to judgment as a matter of law.**

Plaintiff bears the burden of showing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). But Plaintiff supports his "Undisputed Facts" almost entirely with allegations, Mot. at 3-5, thus failing to support his argument with "materials in the record," F.R.C.P. 56(c)(1)(A).

The sparse facts that Plaintiff does cite do not support his claims. His citations to the report finding him responsible for nonconsensual sexual intercourse, and the 2013-14 SCC which he violated, do not establish a due process violation. (ECF #112-1, 112-2.) And the only deposition he cites is Gonzales', addressing his summary suspension. This is irrelevant because this Court "may not inquire into whether the summary suspension itself violated Plaintiff's procedural due process rights." *DiStefano*, 2018 U.S. Dist. LEXIS 76268, *14. (Mot. at 3, ¶ 6.)

II.     **Plaintiff's arguments based on the Fifth Amendment and double jeopardy fail as a matter of law.**

Despite no hint of these allegations in his Second Amended Complaint, Plaintiff's Motion argues that "the investigation as conducted by the investigator forced Doe in the totality of the circumstances to prioritize his Fifth Amendment rights against self-incrimination and avoid constructive 'double jeopardy' over his immediate Fourteenth Amendment due process rights at CU." (Mot. at 11.) Although unclear, the University understands Plaintiff to believe he suffered a due process violation through (1) the fact of the investigation itself, (2) his assertion of his right to silence, and (3) a threat of double jeopardy. Plaintiff is wrong on every count.

A.      Due process does not prohibit the University from investigating potential sexual misconduct.

Plaintiff asserts that because accusations of rape can be criminally prosecuted, it is a constitutional due process violation for the University to conduct an investigation at all. (Mot. at 11.) Presumably, he thinks that the University must wait until after the statute of limitations has run – several years after he would have graduated. *See* § 16-5-401, C.R.S. 2018. He emphasizes that the "Title IX investigation was by no means the complainants' sole remedy." (Mot. at 11 & 13.) He characterizes the University's investigation as "not 'fish nor fowl,' not criminal but not civil," and "investigative limbo." (Mot. at 10.) His solution to this "limbo" is to "return[] these investigations to the criminal justice system, where the rights of all parties have long been established." (Mot. at 16.) But as an education program receiving federal financial assistance, the University has an obligation under Title IX to investigate allegations of sexual misconduct. *Univ. of*

*Colo.*, 255 F. Supp. 3d at 1066.

    B.    <u>The University's investigation did not violate due process by "threaten[ing]</u>
<u>[Plaintiff's] Fifth Amendment rights against self-incrimination." (Mot. at 8.)</u>

Plaintiff next claims that "the Title IX investigation process is fatally flawed through its coercion of accused students into waiving protected Fifth Amendment rights." (Mot. at 13.)

    1.    *Plaintiff did not face an unconstitutional or unreasonably coercive choice.*

Plaintiff asserts that because "the practical effect of the …Title IX investigation process is that for an accused party to offer any kind of effective defense requires the waiver of Fifth Amendment rights," the University's process is constitutionally deficient. (Mot. at 11.) Plaintiff asserts he was faced with an unconstitutional choice. Not so.

The First Circuit has acknowledged that a university student facing allegations of sexual assault which have also prompted a criminal case is "impaled on the horns of a legal dilemma: if he mounts a full defense at the disciplinary hearing …, he might jeopardize his defense in the criminal case; if he fails to fully defend himself or chooses not to testify at all, he risks loss of the college degree … and his reputation will be seriously blemished." *Gabrilowitz v. Newman*, 582 F.2d 100, 103 (1st Cir. 1978). But this "legal dilemma," while perhaps difficult, isn't unconstitutional. *Id.* at 103-04. More recently, a student alleged he faced "a Hobson's choice of fully defending himself in the civil proceeding only to risk having his words be used against him in his state criminal proceeding, or invoking his right to remain silent at the civil proceeding and foregoing a full defense." *Tsuruta v. Augustana Univ.*, 2015 U.S. Dist. LEXIS 136796, at *17-18

(D.S.D. Oct. 7, 2015) (student believed his university's handbook did not respect his Fifth Amendment rights). The court noted that "while [the student's] decision to testify or not at the school disciplinary proceeding may be a difficult one, it does not create a constitutional quandary." *Id.* at *22-23.

To the extent Plaintiff believes a criminal process would alleviate this alleged due process violation, he is incorrect. (Mot. at 16.) He would have had the same Fifth Amendment dilemma had he faced criminal prosecution. Indeed, "[t]he criminal process, like the rest of the legal system, is replete with situations requiring 'the making of difficult judgments' as to which course to follow." *McGautha v. California*, 402 U.S. 183, 213 (1971). For instance, the Supreme Court recognized that an inmate on death row could be made to choose between incriminating himself at his clemency interview and having adverse inferences drawn from his silence. The Court concluded a voluntary interview could not "compel" the inmate to speak, and noted "[h]e merely faces a choice quite similar to the sorts of choices that a criminal defendant must make in the course of criminal proceedings, none of which has ever been held to violate the Fifth Amendment." *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 286 (1998); *see also McKune v. Lile*, 536 U.S. 24, 43 (2002) (recognizing "the inmate in *Woodard* claimed to face a Hobson's choice: He would damage his case for clemency no matter whether he spoke and incriminated himself, or remained silent and the clemency board construed that silence against him").

At bottom, Plaintiff had the chance to participate. He did not. (Additional Facts, ¶¶ 27-33.)

2.    *Plaintiff's silence did not impact his due process rights.*

Plaintiff suggests that because he was not granted "immunity" from criminal

prosecution, and was not given the warning required in *Miranda v. Arizona*, 384 U.S.

436 (1966), the investigator cannot draw negative inferences from his silence. (Mot. at

9-10.)

*Miranda* is inapposite. Tracy-Ramirez's emailed request for Plaintiff to participate

in the University's disciplinary investigation does not qualify as "custodial interrogation"

by any measure. *See United States v. Cash*, 733 F.3d 1264, 1276-77 (10th Cir. 2013).

The University did not draw negative inferences from Plaintiff's refusal to

participate. (Ex. D, p. 37.) *See also Univ. of Colo.*, 255 F. Supp. 3d at 1073. But more

fundamentally, "if the hearing panel intends to draw an adverse inference based on [the

student's] decision not to provide his side of the story at the hearing, that is not a

constitutional deprivation. …[W]hile [the student's] decision to testify or not at the school

disciplinary proceeding may be a difficult one, it does not create a constitutional

quandary." *Tsuruta*, 2015 U.S. Dist. LEXIS 136796, at *22-23.

C.    <u>The University's investigation did not violate due process because it
threatened "constructive 'double jeopardy.'"(Mot. at 8.)</u>

Incoherently, Plaintiff asserts he could not participate in the University's

investigation because he needed to "avoid constructive 'double jeopardy.'" (Mot. at 11.)

The University's disciplinary proceeding has no bearing whatsoever on the

prohibition against double jeopardy. The double jeopardy clause of the Fifth

Amendment, applicable to states through the Fourteenth Amendment, generally

prohibits successive criminal prosecutions on the same charge. *Lockhart v. Nelson*, 488 U.S. 33, 38-39 (1988). It is not a blanket prohibition on two proceedings ever arising from the same alleged conduct. Indeed, double jeopardy does not bar the retrial of a defendant whose conviction has been set aside for error in the proceedings below. *United States v. Medina-Copete*, 757 F.3d 1092, 1107 (10th Cir. 2014).

Because a University disciplinary proceeding is not criminal, any state criminal prosecution would not have been "successive." Again, Plaintiff cites no legal authority for the proposition that no school (university, college, secondary, primary) can proceed with a disciplinary process if the underlying conduct could result in a felony charge. This suggestion insults the importance of protecting all students.

III.   **Plaintiff fails to show a procedural due process violation under the *Mathews v. Eldridge* balancing test.**

Plaintiff asserts that "[u]nder the *Mathews v. Eldridge* [b]alancing [t]est, the inherently coercive nature [of] CU's [SCC] Title IX sexual misconduct investigation policy means that it facially fails to protect accused students' due process rights." (Mot. at 16.)

A.   *Mathews v. Eldridge* and Due Process

To determine what process Plaintiff is due, the Court must balance (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest and the probable value, if any, of additional procedural safeguards; (3) and the government's interest, including the burden that additional procedural requirements entail. *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976).

"Whether a state university has provided an individual student sufficient process

15

is a fact-intensive inquiry and the procedures required to satisfy due process will necessarily vary depending on the particular circumstances of each case." *Plummer v. Univ. of Hous.*, 860 F.3d 767, 777 (5th Cir. 2017). The inquiry should be flexible, keeping in mind that "due process requires, at a minimum, the opportunity to be heard at a meaningful time and in a meaningful manner." *Doe v. Cummins*, 662 F. App'x 437, 446 (6th Cir. 2016). "[A] full-scale adversarial proceeding is not required," but instead, the focus must be on "whether the student had an opportunity to 'respond, explain, and defend.'" *Id.*

B.   <u>Plaintiff fails to show a risk of an erroneous deprivation of his property interest through the procedures used and the probable value of additional procedural safeguards.</u>

Assuming Plaintiff has a property interest in his education affected by his expulsion, he nonetheless fails on the second *Mathews* prong. He identifies no risk of an erroneous deprivation of his property interest through the University's disciplinary procedures, and no probable value of additional procedural safeguards.

1.   *Plaintiff fails to identify any risk of error from the University's procedures because he did not participate, and he admits that he would not have participated regardless of the procedures offered.*

As this Court recognized, "Plaintiff essentially rejected his 'opportunity to be heard' during the investigation process because he apparently chose to stand on procedural objections rather than offering his own side of the story." *DiStefano*, 2018 U.S. Dist. LEXIS 76268, at *23 n.5. At the motion to dismiss stage, Plaintiff's participation was "an important question" that was "best decided on a full record, not on the limited record available at the pleading phase." *Id.* The record now supports this

conclusion: Plaintiff rejected his opportunity to be heard.

Plaintiff was offered the chance to participate. (Ex. I; Additional Facts ¶ 23.) Tracy-Ramirez invited him to provide information or witnesses that he believed would be helpful to his situation. (Additional Facts ¶¶ 24-26.) He chose not to. (*Id.* ¶ 27-33.) As discussed above, *supra* section II.B, his decision to remain silent is not a procedural violation that increases the risk of error. *See Pavel v. Univ. of Or.*, 2017 U.S. Dist. LEXIS 69102, at *18 (D. Or. Apr. 3, 2017) ("Because opting out of process afforded cannot give rise to a procedural due process claim, plaintiff fails to raise a genuine dispute of material fact that more time would have added value to an allegedly deficient process.").

What's more, Plaintiff admits he would not have participated at all, regardless of the University's procedures, because he would have remained silent: "[i]n this case, whatever due process was offered by CU, whether sufficient or not, was essentially unavailable to him given the totality of the circumstances." (Mot. at 2.) And that he may have been following his attorney's advice hardly affects the constitutionality of the University's process.

### 2. Plaintiff fails to identify any risk of error in the University's proceeding based on an unrelated potential criminal prosecution.

Plaintiff next asserts that "the possible error had Doe 'cooperated' with this investigation was that the information he provided would lead to a criminal investigation and prosecution." (Mot. at 13.) Plaintiff identifies the "error" in the outcome as a possible criminal prosecution. Whether the allegations against him could have supported a state criminal prosecution is not an error with the University's process.

      3.     *Plaintiff fails to identify any risk of an erroneous outcome in the University's proceeding based on its investigative model.*

Plaintiff does not support his assertion that "the risk of error …is great where no hearing was provided." (Mot. at 13.) He does not identify specific procedural errors and does not identify any safeguards he believes would reduce the risk of an erroneous deprivation of his rights. Instead, without argument, factual citations, or law, he meanders through four issues: (1) "impartiality of adjudicator," (2) "cross-examination," (3) "reliance on hearsay," and (4) "consolidation of cases." (Mot. at 14-15.)

      a.     "Impartiality of Adjudicator" (Mot. at 14.)

Plaintiff states that "[i]n these student disputed consent cases where the facts are contested and where the accusation can be and is here of what is a felony [sic], the hearing should have an impartial adjudicator." (Mot. at 14.)

But it is "well established that school-disciplinary committees are entitled to a presumption of impartiality, absent a showing of actual bias." *Cummins*, 662 F. App'x at 449-50. "To show actual bias, plaintiff must show decision-makers display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Pavel*, 2017 U.S. Dist. LEXIS 69102, at *20-21. And "alleged prejudice on the part of the [investigator] must be evident from the record and cannot be based in speculation or inference." *Cummins*, 662 F. App'x at 449-50.

Plaintiff does not point to any evidence of actual bias, either on the part of Tracy-Ramirez or the investigation generally. To the contrary, the evidence demonstrates the process is impartial. Valerie Simons, Associate Vice Chancellor and Title IX Coordinator at CU Boulder, testified that the University strives to ensure "promptness and equity and

fairness to the parties." (Additional Facts ¶ 34; Ex. H, Simons Dep. 33:7-9.) She explained that the University's model allows the most equitable opportunity to be heard, considering the limitations of a university setting, by providing the same rights to both sides and encouraging voluntary participation. (Ex. H, Simons Dep. 33:15 -34:12; 35:3-36:13.) And as Simons emphasized, voluntary participation is particularly important because the University does not have subpoena power. (Ex. H, Simons Dep. 34:2-3.) For this reason, an investigator model is superior to a hearing model, because the investigator can accommodate student schedules and can persistently seek participation from reluctant students who could easily duck a hearing officer with no subpoena power. Further, there is no evidence that investigators or the University engages in what Plaintiff terms "trauma training" or that it considers male respondents to be "rapists." (Ex. H, Simons Dep. 60:19-21; 62:10-63:8; Ex. N, Doty Dep. 14:10-17.)

Additionally, the University's procedures sufficiently minimized the risk of an erroneous deprivation of Plaintiff's rights. He received notice of both investigations, which included details about the alleged misconduct. (Additional Facts ¶¶ 2-3, 7.) Tracy-Ramirez invited him to participate in the investigatory process, (*Id.* ¶¶ 23-26; Ex. I; Ex. C, Tracy-Ramirez Dep. 109:3-12), allowed his advisor to attend and communicate on his behalf (Ex. I; Ex. J), extended deadlines for his participation, (Ex. I; Ex. B, Pl. Dep. 46:10-19; 47:4-9), and requested follow up. (Ex. I, CU_167-168.) What's more, he was provided the opportunity to review the investigator's records, including all witness statements. (Additional Facts ¶ 23; Ex. C, Tracy-Ramirez Dep. 107:24-108:7; 132:9-12.) Plaintiff and his attorney did review the investigator's records. (Additional Facts ¶ 23.)

Yet he chose not to provide any information or respond to the investigative file. (*Id.* ¶¶ 27-30; Ex. C, Tracy-Ramirez Dep. 113:12-115:4.)

        b.    "Cross-Examination." (Mot. at 14.)

Plaintiff's argument on this point, quoting Wigmore and *Davis v. Alaska,* is perfunctory at best.

Although the Sixth Circuit has decided that respondent students have a right to cross-examination in some university disciplinary proceedings, the Tenth Circuit has not. *See, e.g.*, *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018) (The Sixth Circuit recognizes that "[i]f a university is faced with competing narratives about potential misconduct, the administration must facilitate some form of cross-examination.") And this Court should not recognize this right here, because Plaintiff does not identify how cross-examination would have lessened the risk of any alleged error in the outcome.

There were no competing narratives because Plaintiff did not – and would not have – participated in any University procedure because of his concerns about his Fifth Amendment rights and "double jeopardy." *Supra* section II.B. Plaintiff didn't even suggest any questions for Tracy-Ramirez to ask Jane Doe 1 or Jane Doe 2. (Additional Facts ¶ 28.)

Additionally, the available narratives – including seven of Plaintiff's fraternity brothers – weren't competing, they were consistent. (Additional Facts ¶¶ 9, 11, 13, 17-19.) Tracy-Ramirez spoke with twelve witnesses. (*Id.* ¶ 8.) Jane Doe 1 and Jane Doe 2 confirmed that they did not consent to sex with Plaintiff. (*Id.* ¶¶ 9, 19.) Numerous members of Plaintiff's fraternity expressed concern that Plaintiff engaged in

nonconsensual sexual intercourse with Jane Does 1 and 2. (*Id.* ¶¶ 11, 13, 15.) Most notably, Plaintiff offered no response to, or questions to be asked of, Witness E.S., who testified that he heard Plaintiff bragging about having sex with Jane Doe 1 despite her saying no. (*Id.* ¶¶ 13-14.) Instead, he only issued a general denial. (*Id.* ¶ 29.) He otherwise did not contradict any of the information that Tracy-Ramirez received. Thus, even if the process had been different and even if Plaintiff had participated, "further procedural safeguards would not have lessened the risk of an erroneous deprivation of [Plaintiff's] interests or otherwise altered the outcome." *Plummer*, 860 F.3d at 774.

        c.     "Reliance on Hearsay" (Mot. at 14-15.)

Plaintiff also argues that the use of hearsay violated his due process rights. Again, Plaintiff presents this section with little argument and no factual citations, ending with the observation that "exclusive reliance on hearsay for an administrative decision violates procedural due process." (Mot. at 15.) First, as courts have recognized, university disciplinary proceedings "are not bound by formal rules of evidence." *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 602-03 (S.D. Ohio 2016) (*aff'd sub. nom. Doe v. Cummins*, 662 F. App'x 437 (6th Cir. 2016)). Second, the investigator's decision finding him responsible was not based "exclusively" on hearsay. Both Jane Doe 1 and Jane Doe 2 spoke with Tracy-Ramirez. And while Jane Doe 1 remembered little because of her intoxication, Jane Doe 2 confirmed that she was raped. (Additional Facts ¶¶ 19-21.) Other witnesses also relayed first-hand conversations with Plaintiff and their own observations – and statements made by Plaintiff himself are not hearsay. FRE 801(d)(2). (Additional Facts ¶¶ 11, 13.)

And Plaintiff simply fails to support this contention with facts or argument at all. *See Cummins*, 662 F. App'x at 447 ("[A]ppellants challenge the use of hearsay evidence without adequate safeguards. Appellants' complaint, however, fails to indicate what hearsay was actually allowed against them in their hearings.").

          d.     "Consolidation of Cases" (Mot. at 15.)

Finally, and for the first time, Plaintiff now believes it was prejudicial to conduct one investigation for the two assaults of Jane Doe 1 and Jane Doe 2. Plaintiff's argument is one sentence long: "[p]rejudice disallows consolidation of cases." (Mot. at 15.) He says nothing at all about due process. He says nothing about any increased risk of an erroneous outcome from consolidation. And again, he does not cite any authority for this "theory."

Without any facts to support his contention that the University's process increased the risk of an erroneous deprivation of his interest, or that any additional procedural safeguards would have decreased that risk, he fails the second *Mathews* prong and fails to demonstrate that he is entitled to judgment as a matter of law.

## IV.    Conclusion.

Plaintiff winds up his Motion by returning to his theory that the threat of criminal prosecution creates a constitutional bar to the University's disciplinary process. (Mot. at 15-16.) This argument has not improved.

Summary judgment should be denied.

**DATED**: March 22, 2019.

Respectfully submitted,

*s/ David P. Temple*
David P. Temple
Senior Associate University Counsel
University of Colorado
Office of University Counsel
1800 Grant Street, Suite 700
Denver, CO 80203
Tel: 303-860-5691
Fax: 303-860-5650
David.Temple@cu.edu
*Attorney for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2019, I electronically filed the foregoing with the

Court's electronic filing system (CM/ECF) which will automatically cause notification to be

sent to the following counsel of record:

Michael J. Mirabella, No. 11435
270 St. Paul Street, Suite 200
Denver, CO 80206
mmirabella@ckbrlaw.com
*Attorney for Plaintiff*

Andrew T. Miltenberg, Esq.
Tara J. Davis, Esq.
Philip Arwood Byler
Nesenoff & Miltenberg LLP
363 7th Avenue, Fifth Floor
New York, NY 10001
amiltenberg@nmllplaw.com
tdavis@nmllplaw.com
*Attorneys for Plaintiff*

Patricia A. Mellen
Pat Mellen Law LLC
1888 North Sherman Street, Suite 200
Denver, CO 80203
Email: pat@patmellenlaw.com
*Attorney for Plaintiff*

*s/ Laura Isacco*
Laura Isacco, Legal Assistant